Good morning. I'm Judith Wood representing Lima Jacobo. This woman is a woman from Guatemala, but I'm sure you're... There are a couple of things I don't understand about your argument. One is the social group of women who get beaten by their husbands in Guatemala, and the government won't do anything about it. She doesn't have a husband. He was killed. We never defined her social group as someone who was beaten by a husband. Although she's afraid of being hurt in Guatemala on account of the fact that she's a woman, she doesn't fear being hurt by her husband, who is dead. She's remarried. Everybody's afraid of being hurt in Guatemala. The men get hurt at many times the rate of women, according to the material you gave us. But it's not one of the categories in the statute. But Perdomo is not limited to people who are fleeing domestic violence. Perdomo, we remanded the case back to the BIA or remanded it to the BIA to consider whether or not women could be a protected group. Anne, I really think that's what should happen, but I just want to give you a little more information. Her husband in Guatemala was assassinated. You're talking about now your client. Right. Okay. This person's, Lima Jacobus' husband was assassinated. He was attacked twice. He was shot in 1994, and then he was killed in 1995. In the record, the judge sort of tries, I, in my opinion, tries to sort of trick and trap the respondent and then finds her not credible as a result of her describing him being shot in 1994 and then shot again in 1995. And then the judge tries to hold to account for exactly what happened moment by moment when he was found in the coffee field adjacent to his house, shot almost to death, not to death. He took three days to die. How do you tie that, though, to a petition from a third and untimely and, what do they call it, numerosity or something, a third petition, a third motion to reopen that was untimely? This is actually the fourth motion to reopen, the third one she did on her own. And my office, we persisted in filing these motions. And then because I was acutely aware of the situation for women in Guatemala even before Perdomo came down. You have to do them on time, and you only get one unless there's a change. And as far as I can see from what you've given us, there's no change. Well, there is a change. And the government in their briefs has said things are horrible for women in Guatemala and were at the time of her hearing. And, therefore, the fact that they're worse doesn't even matter. That's a very, very cold and callous way of looking at things. You could say that there was persecution against a particular ethnic group in the country. Why don't we stipulate for the moment that it's a very bad country to be in if you're a married woman and your husband is inclined to beat you. And why don't we stipulate for the moment that it's a very dangerous country. I still don't see how that gets you anywhere. It's not limited to married women. Women of all shapes, colors, and sizes, rich and poor, single, married, are subjected to femicide in the streets of Guatemala. Not at all limited to married women. Counsel, as I reviewed this case, it seems to me that the issue here is, as we look at the decision of the BIA, was the denial of the motion to reopen due to the failure of your client to introduce previously unavailable material showing material change in conditions. And as I went through all of the materials that you attached, and I read those very carefully, it seemed to me that the condition that you're advancing for this material change of conditions, that this information, this knowledge, was available at the time of the hearing back in 2002. Am I missing something there? Yes, Your Honor. Okay, please help me with that. There have been other instances in history where groups of people of one gender or of one ethnic group or another were subject to perhaps persecution, but then were subject to annihilation. That's what's happening in Guatemala. Women are subject to annihilation, femicide, and it doesn't matter. Well, that sounds like you've got a problem at least with this Amnesty International report in the record. You've got 1,715 murders of women between 2002 and 2005 and 15,998 murders of men. And as far as I can tell, the murderers aren't brought to justice for either one, 2% or 3%. It looks like it's a scary country to be in. It doesn't look like it has anything to do with being female, except maybe for the failure of law enforcement on domestic abuse, just like other kinds of abuse and murder. And it looks as though, if anything, it's not quite as bad as it used to be for women when rape seems to have been used partly as a tool of war during the Civil War that's now over. Your Honor, I beg to differ with you. Well, tell me what statistics are in the record that show that things are worse now between her third and her fourth motion to reopen. There's been an increase in crimes against women in femicide. And women are not only murdered, they're raped, brutally raped before they're murdered. So how can the court say, well, just because it was bad before—  is a very substantial change in country conditions between the third and the fourth motions to reopen. And that's what I can't find in the record. Well, I did submit numerous documentation, which I can refer to, too. Could you also clarify something for me, just so I have the scenario down correctly? At the first hearing, did she raise this issue? At the very original hearing in 2002 when she was seeking asylum, did she raise this claim of social group? No, I don't think she did. During her hearing before the immigration judge, she was talking about the fact that her husband was killed. That was the main thing. She was married to— She didn't raise social group status. No, not at all. It was based on her husband's kill. When she filed her first motion to reopen, what did she raise in the first motion to reopen, the one she filed on her own? She wanted to be found credible. The judge didn't find her credible, so she was trying to— And that was summarily dismissed? Right. She did it on her own. I'm saying she did it on her own. And then you stepped in and you filed a new motion to reopen. Yes, I did. That would have been the second motion. Yes, the second motion to reopen. And that would have been untimely. Right. And it would have been barred because it was the second one. She had already done it. Right. So in that motion, did you raise the social group issue? Yes, I did. And what did you try to show about change country conditions? Basically that the increase in murders against women— From when to when? Well, it's been an incremental increase. I can't give you the exact date of each murder, but it's been completely recorded, and there's tremendous documentation as to the increase, not only in murder, but rape and mayhem and disfiguration of women. Now, was that the sole basis for the second motion to reopen, just the social group issue? Yes. When did you file the affidavit that provided support for the assassination of her husband? In connection with which hearing was that? And I say you. I don't know if you were the counsel that did it. I didn't represent her at the hearing. Okay. But you filed some declaration with your motion, your very first motion to reopen. Isn't that right? I was in possession of a document that she actually submitted at her first hearing, maybe, I think, that was from a friend of the husband, a friend of the husband who attested to the fact that the husband had in fact been killed probably by these political associates, a former political association. I didn't think you really raised this social group issue until the third motion to reopen, when you began to put in all this documentation, which was denied. There was a petition for review in this court which affirmed or denied the petition for review. Isn't that right? I believe so. Right. What was – and then Perdomo came out. Right. And then you filed a new motion, and you seem to be arguing that Perdomo created a new factual basis. Not a factual. Which it doesn't. It's not a factual basis. But Perdomo reflects a change. Perdomo reflects a recognition by this Court that the situation in Guatemala is very difficult. All it said was that women could – it's possible under the BIA's social group framework and under our framework that if it's done correctly, women, it's possible that women could be a social group. And we sent it back to the BIA to look at it. And I gather the BIA sent Perdomo's case back down to the IJ for further – a further evidentiary hearing. Yes. And that's what should happen with this case. But when and if it does go back to the judge – So let me ask you this, though. There is one – Judge Kleinfeld does raise a concern, which is what is different between this current motion, the fourth motion, and the third motion? What is different? The fact that – Just Perdomo? Well, it's not just Perdomo. It's the fact that the Court, this Court, recognizes a change in Guatemala as far as how that country either protects or doesn't protect women in the light of ongoing femicide. This Court has recognized that. Where did we say that? Here. Thank you. I thought it was an analysis of the law rather than finding a fact. This Court in Perdomo recognizes that women from Guatemala who fear being murdered or raped or a combination of – Oh, it was analyzed – the law relating to social group and how it's evolved. Well, there's a whole string of cases – She had a claim. She said, I'm – Ms. Perdomo, essentially the same claim that you're raising here. And we said – she raised it. It didn't come up to us on motions, on belated motions to reopen. It was a direct appeal. Right. And we sent it back because they didn't do a proper legal analysis. And yet many cases – They've subsequently, this past summer, the Board came out with two decisions where they narrowed – they defined a narrow group of Guatemalan women who were subjected – who had been subjected to domestic abuse. Right. There's the Board's decision on that. Right. There's two Board's decisions, and they recognized those. On the other hand, this Court has remanded many cases, not involving women, but men, men from Central American countries, in light of the new cases on the definition of a particular social group requiring social visibility and particularity. Well, what's the social group that you contend exists here? Well, I don't think she's – Women, Guatemalan women? I don't think that she's just a woman from Guatemala. I think she's a woman whose husband has been assassinated and who has received threats herself. And therefore, she's particularly socially visible. But is that the way you – in your motion to reopen, is that the way you defined the social group? Well, what's wrong with that definition? She's a political woman. Now you're – I'm the one who's asking the questions. Did you define the social group in that way in your motion to reopen? If it's remanded, I will define it that way, yes. You're not answering my question. You didn't define the group that way, did you? In this brief, it's defined as women. Women. From Guatemala. Guatemalan women, yeah. Right. So let me go back to my original question. As I look at these material change circumstances, going, let's say, all the way back to the first hearing or the hearing in 2002, femicide has been ongoing in Guatemala since – I mean, for a long time. And you provided us with good documentation of that. Is your argument as to the materiality of the change conditions essentially that it has gotten worse? Very much so. And I didn't represent her at that hearing. Okay. No, I understand that. But is that the essence of the materiality is that it's gotten worse? Yes. Okay. Which I would concede based on the materials. The quantitative difference has changed the quality of the danger. The danger is much, much worse in terms of – I think the numbers that you put in for – in the excerpts for murders of women, the biggest increases were in 2001 and not as big as that, but the second biggest in 2004. I just don't understand what the change is between the third and the fourth motions to reopen. There's a tremendous incidence of collusion between the government. Women cannot get the protection that they need. There's always been violence, but they can't get the protection that's required to protect them from violent deaths and atrocities. Let me ask you this. I've let you go over your time, but I just have one last question for you. Is there any possibility of – she's been here for a long time, right? Many years, Your Honor. Is there any possibility for prosecutorial discretion here under the existing – Well, in light of the speech given last night, I believe there may be. She's been here many years, yes. All right. Why don't we hear from the government? Thank you. Thank you. May it please the Court, David Wetmore for the Attorney General. Your Honors, Judge Kleinfeld, you hit it directly on the head. The only issue here is whether the Board abuses discretion in denying her repetitive second motion to reopen on this exact issue. The only question with regard to that issue is was there a material change? It's clearly not documented here. Therefore, the Board did not abuse its discretion. Well, there has been a change. We did recognize in Perdomo, which was not out at the time the Board ruled on the first motion that raised this issue, correct? Yeah. The Perdomo decision was issued about one month after the first decision in this case. And we would submit that the Petitioner and Perdomo simply not similarly situated to the Petitioner in this case. Well, procedurally, they're not situated, but they're making the — they made the essential — the essentially the same claim, correct? Well, they've defined the social group in the same way, but the key here is the determination that has to be made is not whether this social group could exist hypothetically and whether the Board would pass on that decision since it's been remanded, but whether substantial material changes have occurred since the last time in 2010 when the — when this Court denied the petition for review of the 2006 motion to reopen on this identical issue. And the materials submitted simply do not evidence that change, and therefore, the Board did not act arbitrarily or rationally or contrary to law. Just a moment ago, Ms. Wood attempted to redefine the social group that had been raised here, a much more narrow social group. Well, I believe she was misdefining the social group and that she was defining that based upon the harm that her client had individually suffered. I thought we had two things going. Her first argument, I thought, was that all women from Guatemala are entitled to asylum because as a social group, women are murdered disproportionately in Guatemala. And I thought her second argument was that her social group is Guatemalans who are female and whose husbands have been murdered. Yeah. I believe she's sort of vacillated between those two definitions of social group, and frankly, neither of which are relevant to the determination of whether there are materially changed conditions in order to get to that step and say whether this, you know, new asylum claim can go forward. Her motion to reopen, her fourth motion to reopen, is untimely by years. Her final decision was in 2002. How come she's still here? I mean, she's been litigating and losing for years and years now. The only time she had something to go on was her husband getting killed. That was her petition for asylum before everything else became untimely. And she lost on it, and I don't know if she should have lost or should have won. She says she should have won, maybe so. But we can't do anything about that, as I understand it. How come she's still here? Well, she continues to file. She continues to litigate. Can you just stay here as long as you file stuff? And it's been litigated? If she continues to file and stays or continued to be granted, then ICE cannot remove her. And as long as there's a statement as long as you keep filing papers. Is she eligible for any prosecutorial discretion? In light of the death of her husband, in light of her age? Well, we've looked at the question. I've consulted this past Friday with the Office of Chief Counsel, and they didn't believe that she fit any of the criteria based on her initial adverse credibility finding and the fact that she just continues to file essentially meritless petitions for review in this Court and string this thing along. I mean, this Court has already denied the petition for review on the direct appeal. It's denied the petition for review for the third and fourth. Well, I've seen we handle a number of cases where the petitioners, their record before the Court and what they've done in the country. I've been here, as Judge Kleinfeld just pointed out, for years, whatnot. And lo and behold, they get prosecutorial discretion. Yes, Your Honor. I think that does occur. I've consulted with the Office of Chief Counsel here. They didn't see any reason to move forward with that. How about what the President said last night? Does that have any help to her? I don't believe that it is. We – I reviewed – there's a memorandum issued today by the Secretary of Department of Homeland Security, and it lists the criteria that will still be enforced. The petitioner here does not have any United States citizen or lawful permanent resident children or other relatives that would in any way sort of bring her within the ambit of the individuals being protected by it. I think she left her daughters with her – what was it, mother-in-law? I believe that's correct. I noticed there were two Guatemalan born – No, all the other women in the family are in Guatemala. That's my understanding. And so they wouldn't qualify for any form of relief. She's here. She doesn't have any qualifying relatives based on what we believe, based on this memorandum, based on the President's speech last night. She still fits in one of the categories of priority enforcement. It's a lower category, but she still fits within it. Her age doesn't count for any – how old is she? I believe she's 50. Fifty. I believe she is. And, you know, in the same respect, you know, she's continued to file various, as this Court's found and the Board's found, meritless appeals. And she's filed a meritless appeal and now four meritless, we would suggest, motions to reopen and, you know, to be rewarded for vexatious litigation simply by stringing it out. Well, I mean, you know, there was a change in the law with Perdomo. I mean, not, let's say, a fundamental change in the law, but it did recognize that women could. Yeah, and absolutely. That's certainly, I know, as your author wrote that decision on behalf of the Court. But we don't ever reach Perdomo because the threshold question is whether there was a material change in the country conditions. And it's simply not there. Do you need to define the social group, actually, to deter – before you can decide whether there's been a material change? I don't believe that you necessarily would. The way in which we understand she's defined it would be in accord with Perdomo if she's saying that there was a change in the law that would in some way cause this Court to reexamine it. So the social group there at issue would be all women in Guatemala. And, you know, that question, that decision has never been made by the Board. Here we look at conditions for women, be it rape, murder, spousal abuse, and we go through all of the country reports, the 97, the 2,000 that were available at the time she filed her original political claim, both of which say violence against women remains common among all social classes. That's a 97 report. That's 637 in the record. 2,000 report identical language at 585. The two report the same. Well, you know, the documentation that's in the record suggests that there has been a change in the nature, the quality of the – or the substance of the harm directed towards women. Well, the only statistic that's pointed out whatsoever that would in any way indicate any change was a statistic that actually wasn't even raised to the Board. We would argue that it – therefore, the argument based on that statistic has not been exhausted as we do in our brief. But it's a statistic found at page 97, and it's reporting of women that have been killed. Well, conditions have also changed with regard to reporting. You know, the 2002 Department of State says victims rarely reported sexual violence. Complaints of such offenses continue to increase. They did not reflect an increase in the number of rapes committed, but that women are more willing, as time goes on, to report these things. In 2008, Guatemala passed a significant law regarding femicide and combating it, making it much more likely that these things are going to be reported. So it doesn't necessarily reflect an abuse of discretion to find that that does not a report of something that slightly increases. And as Judge Kleinfeld pointed out, these increases have been seen in other years predating this current motion to reopen. That doesn't necessarily mean there has been more of it. It's simply slightly more was reported in one year. So we find that, you know, that would not render the Board's decision arbitrary or contrary to law. Counsel, let me go back to the standard here just for a minute. This Court has enunciated what the critical question here is, which is whether circumstances have changed sufficiently that a petitioner who previously did not have a legitimate claim for asylum now has a well-founded fear of future persecution. And as far as materiality and availability of that kind of information, this Court has held that the information, the evidence that was presented at the most recent hearing needs to be qualitatively different. That's the language. My question for you is, is it possible that an increase in violence against women in Guatemala, let's say that we find that there's an increase in violence of a significant degree that has occurred between the last hearing or the hearing before that and the most recent one, does, could that constitute a qualitative difference, just an increase in violence in your opinion? Well, Judge Christensen, I think in order to answer your question, I think I need to back up and address that. There are two different standards at play. I believe the standard that you quoted was changed circumstances, which is not at play here. Changed country conditions are at play here. The changed circumstances provision only goes to whether the individual, the applicant, can sort of get around the one-year bar for bringing the asylum claim. That's a much lower standard than demonstrating on a motion to reopen changed country conditions. This Court has recognized that in Chen, which is at 524, Fed 3rd, 1030, and said, yes, the changed country condition standard for a motion to reopen is continued. Well, it's consistently higher than the burden required to simply overcome that one year. Okay. Let's use the changed country conditions. Could an increase in violence against women satisfy that standard? It could, if it was demonstrated to have a material significant increase here, no, no such showing has been made. This violence has existed for many years. It ebbs and flows. Well, there's some in the record. There is some evidence. I mean, you just pointed to it. Just because she didn't make a precise argument regarding this certain statistic to the board, what's not, you know, we waive sort of claims, not arguments. As long as the evidence is in the record. Well, it's not, and we would argue that the evidence is not in the record. There's an evidence that over years the reporting of these incidents has gone up and down. And our argument is simply because reporting has gone up and down. It does not necessarily lead to the conclusion that the violence hasn't actually increased. And in fact, there's multiple references throughout Petitioner's own materials that say these statistics, in fact, are highly unreliable. They, you know, the article from which that comes indicates that there is broad consensus that the magnitude of the problem has been obscured by the lack of reliable statistics on femicide. That's at page 92. Okay. So the statistics are unreliable. She hasn't demonstrated material change in country conditions. And because of that, there has been no abuse of discretion. The board's decision was not irrational, arbitrary, or contrary to law. All right. Thank you. I'll let you go over your time. Thank you. Thank you, Your Honor. Ms. Wood, you went over your time, so no rebuttal. The matter is submitted.
judges: Christensen, Kleinfeld, Paez